| | |
|---|---|
| LYNN ALAMILLA, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br>vs.<br><br>BEYER & ASSOCIATES, LLC,<br><br>          Defendant. | Case No.: 20-cv-1430<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Lynn Alamilla is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect arose from consumer transactions including an

agreement to defer payment. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

6. Defendant Beyer & Associates, LLC ("Beyer") is a law firm with its principal place of business located at 12381 E. Cornell Avenue, Aurora, Colorado 80014.

7. Beyer is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Beyer is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Beyer is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

9. On or about November 13, 2019, Beyer mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "ABM Milwaukee." A copy of this letter is attached to this Complaint as Exhibit A.

10. Upon information and belief, Exhibit A was the first letter Beyer sent Plaintiff regarding the alleged debt to which the letter refers.

11. Upon information and belief, the alleged debt that Beyer was attempting to collect by sending Exhibit A to Plaintiff was allegedly incurred for personal, family or household purposes, namely an alleged debt for parking in a private parking lot.

12. ABM Industries, Inc. ("ABM") is a foreign corporation with its primary place of business in New York. ABM operates numerous parking lots in Milwaukee and throughout the United States. This complaint does not include any claims against ABM.

2

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Beyer to attempt to collect alleged debts.

15. Exhibit A seeks to collect $240.00 for alleged non-payment for parking services in one or more of ABM's parking facilities.

16. Exhibit A falsely represents it is from an attorney.

17. Exhibit A identifies Beyer as a "law firm."

18. Exhibit A appears to be hand-signed by "Tony Tucker."

19. Exhibit A strongly implies, and the unsophisticated consumer would deduce that Tony Tucker is an attorney with Beyer.

20. Tucker's email is listed as "Tony@parkingattorney.com.

21. The first sentence on Exhibit A also states that "Our firm represents ABM Milwaukee for its collection matters." Another sentence in Exhibit A requests Plaintiff "contact our law firm …."

22. Upon information and belief, "Tony Tucker" is not an attorney.

23. A search of both the Wisconsin State Bar "Lawyer Search" (https://www.wisbar.org/Pages/BasicLawyerSearch.aspx?lastName=Tucker) and the Colorado Supreme Court Office of Attorney Regulation Counsel (https://www.coloradosupremecourt.com/Search/AttSearch.asp) for the surname "Tucker" return no "Tony Tucker" or "Anthony Tucker" licensed as an attorney in either state.

24. On or about December 17, 2019, Beyer mailed another debt collection letter to Plaintiff regarding the same alleged parking debt as referenced in Exhibit A. A copy of this letter is attached to this Complaint as Exhibit B.

25. Exhibit B also appears to be hand-signed by "Tony Tucker" and contains representations that Tony Tucker is an attorney, similar to those in Exhibit A.

26. Exhibits A and B also falsely threaten imminent legal action.

27. Exhibit A states:

> If this matter is not resolved, ABM Milwaukee may authorize its legal counsel to begin legal action against you and proceed to collect this debt through court proceedings.

28. Exhibit B states:

> Failure to contact our office to resolve this matter, may result in legal proceedings being commenced against you.
>
> You may contact our Law Firm at 720-927-2688 or email me at Tony@parkingattorney.com to discuss this matter.

29. The unsophisticated consumer, receiving letters from a law firm with the above language, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

30. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

31. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become

4

professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

32. The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

33. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

34. <u>Exhibits A and B</u> do not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005). In fact, <u>Exhibits A and B</u> both go out of their way to trick consumers into believing that Beyer intends to sue them.

35. Moreover, upon information and belief, Beyer had no intent to sue Plaintiff to collect the debt identified in <u>Exhibits A and B</u>, which was only for $240.

36. Upon information and belief, Beyer was engaged to send collection letters to Plaintiff and not to sue Plaintiff or any other class member.

37. Upon information and belief, a significant portion of Beyer's debt collection activities consists of computer-automated processes, including the sending of computer-generated form letters like <u>Exhibits A and B</u>.

38. Upon information and belief, no attorney at Beyer reviewed <u>Exhibits A or B</u> before they were mailed to Plaintiff.

39. Upon information and belief, no attorney at Beyer was meaningfully engaged in Plaintiff's file prior to the mailing of Exhibits A and B.

40. Indeed, if any attorney at Beyer had been meaningfully engaged in the file prior to the mailing of Exhibits A and B, he or she would have known that the letter contains false and misleading representations, including the false threat to sue Plaintiff and the false representation that Tony Tucker is an attorney.

41. Exhibits A and B also mislead the consumer about the name of the creditor to whom the debt is owed.

42. Exhibits A and B both state that Beyer "represents ABM Milwaukee for its collection matters."

43. Exhibits A and B both also state:

Please pay the total due of $240.00. Payments should be made payable to Parking Revenue Recovery Services (PRRS). Payments should be sent to:

Parking Revenue Recovery Services, Inc.
Attn.: Payment Center
12381 E. Cornell Ave.
Aurora, CO 80014

44. The representation that Plaintiff owes money to ABM and to "Parking Revenue Recovery Services, Inc." ("PRRS") would be confusing and misleading to the unsophisticated consumer.

45. Exhibits A and B do not clarify the roles of ABM and PRRS in Plaintiff's alleged debt.

46. An unsophisticated consumer would not be able to determine whether ABM assigned ownership of the account to PRRS, or whether ABM sold Plaintiff's alleged debt after it defaulted and the account charged off, or whether PRRS is merely collecting payments on behalf of ABM.

6

47. Whether a person has taken assignment of an account after the consumer's default is material information in determining whether that person is a "creditor" of the account as that term is used in the FDCPA. *See* 15 U.S.C. § 1692a(6)(F)(iii) (defining "debt collector" to exclude any person collecting "a debt which was not in default at the time it was obtained by such person."); *see also McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 501 (7th Cir. 2008) (discussing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).

48. The Seventh Circuit recently held that a debt collector must *clearly* identify the current creditor of the debt:

> If the validation notice required under § 1692g(a)(2) does not identify the current creditor clearly and accurately, the law has been violated. A plaintiff need not offer additional evidence of confusion or materiality to prove the violation.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016).

49. "*Clear* identification of the current creditor serves the important purpose of helping unsophisticated consumers avoid fraud and the potential for double payments." *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *5-6 (S.D. Ind. Sept. 19, 2018) (citing *Janetos*, 825 F.3d at 319 and *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *4). Failing to clearly identify the creditor may lead to the consumer inadvertently paying the wrong entity and still owing the debt, if valid, to the actual creditor.

50. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist.

7

LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

51. Plaintiff was confused and misled by Exhibits A and B. Plaintiff believed that Beyer would sue her to collect the debt.

52. The unsophisticated consumer would be confused by Exhibits A and B.

53. Plaintiff had to spend time and money investigating Exhibits A and B.

### *The FDCPA*

54. The FDCPA creates both substantive and procedural rights for consumers, and violations of those rights risk harm to concrete interests that the FDCPA protects. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the

8

Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

55. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

56. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading

communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

57. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

58. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

59. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

61. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

62. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

63. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

64. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and

sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

65. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

66. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

67. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

68. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

12

69. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

70. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

71. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

72. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

73. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Exhibit A threatens to sue the recipient to collect the debt.

76. Beyer had no authority to sue Plaintiff over a $240 debt.

77. Beyer had no intention to sue Plaintiff over a $240 debt.

78. No attorney at Beyer is licensed in Wisconsin.

79. The person who signed Exhibit A, "Tony Tucker," is not an attorney in Wisconsin or Colorado.

80. The threat of legal action in Exhibit A was false and misleading.

13

81. Such conduct violates 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT II -- FDCPA

82. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83. <u>Exhibits A and B</u> falsely purport to be from an attorney when no attorney was meaningfully engaged in Plaintiff's file when <u>Exhibits A and B</u> were mailed. If an attorney had been meaningfully engaged in Plaintiff's file when <u>Exhibits A and B</u> were mailed, the attorney would have recognized that <u>Exhibits A and B</u> contain the misrepresentations described in this complaint, violate the FDCPA, and violate the WCA, creating liability for ABM.

84. Such conduct violates 15 U.S.C. § 1692e(3).

## COUNT III -- FDCPA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. The representation that Plaintiff owes money to ABM and to "Parking Revenue Recovery Services, Inc." ("PRRS") would be confusing and misleading to the unsophisticated consumer.

87. <u>Exhibits A and B</u> do not clarify the roles of ABM and PRRS in Plaintiff's alleged debt.

88. <u>Exhibits A and B</u> mislead the consumer about the name of the creditor to whom the debt is owed.

89. Such conduct violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692g(a) and 1692g(a)(2).

## COUNT IV – WCA

90. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Exhibit A creates the false impression that Beyer would sue Plaintiff over the alleged debt and that legal action had already commenced or was imminent.

92. Beyer had no authority to sue Plaintiff over a $240 debt.

93. Such conduct violates Wis. Stat. §§ 427.104(g), 427.104(h), 427.104(j), and 427.104(L).

## CLASS ALLEGATIONS

94. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A or B to the complaint in this action, (c) seeking to collect a debt allegedly owed to ABM and (d) incurred for personal, family or household purposes, (e) between September 11, 2019 and December 4, 2020, inclusive, (f) that was not returned by the postal service.

95. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

96. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA.

97. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

98. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

99. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

100. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 4, 2020

**ADEMI, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com